HON. WILLIAM G. BARRY Chairman, New York State Racing and Wagering Board
This is in reply to your Counsel, John Van Lindt's request for my opinion concerning the application of section 8052 of the Unconsolidated Laws, in relation to public school teachers being licensed as participants and employed at facilities conducting pari-mutuel racing.
Paragraph (a) of subdivision 1 of section 8052 prohibits public officers and employees and party officers from holding any license from the state racing comission or the state harness racing commission.
Paragraph (c) of that subdivision prohibits public officers and employees and party officers from holding office in or being employed by any firm, association or corporation which is engaged directly or indirectly in conducting pari-mutuel racing.
The term "public employee" as defined in subdivision 3 of section 8052, encompasses public school teachers employed full time or who earn more than $8,000 per annum.
Subdivisions 6, 7 and 8 of section 8052 provide certain exceptions to the foregoing prohibitions. Under subdivision 6, the provisions of subdivision 1(c), in relation to employment, are not applicable to a public employee who earns less than $18,000 per annum. Under subdivision 8, the provisions of subdivision 1(a), in relation to participation in racing, shall not bar a person employed by a school district, the State University or a community college from holding a license issued by the state racing commission, harness racing commission or quarter horse racing commission.
It should be noted, however, that under subdivision 6, any political subdivision may prohibit the employment of its employees, otherwise eligible, in pari-mutuel racing by the adoption of an appropriate ordinance, resolution or local law.
Subdivision 7, added in 1955, provides that paragraph (a) of subdivision 1 shall not be a bar to the licensing of any public officer or employee or party officer who was qualified to hold such a license on or before April 6, 1954.
Accordingly, in my view, a public school teacher is not barred by reason of such employment from being licensed as a participant in pari-mutuel racing. It is equally clear, however, that a public school teacher is eligible for employment in a pari-mutuel facility only if he earns less than $18,000 per annum in his public employment, and not otherwise.
I find no support in the statute or in any reasonable interpretation thereof for the contention, reported in your letter, that subdivision 8 effectively relieved teachers of all prohibited activity as a "preferred class"; subdivision 8 refers explicitly and solely to the bar created by subd. 1(a) — i.e., to licenses as participants.
Nor do I find any support for the contention that subdivision 7 authorizes the employment of public school teachers who would have qualified for such employment in 1954 because they were earning less than the maximum salary limitation then in effect. Again, subdivision 7, as does subdivision 8, refers explicitly and solely to the provisions of subdivision 1(a). The intended distinction between "participants" and "employees" is fully discussed in Matter of Murtha v. Monaghan (1 A.D.2d 178, affd. 2 N.Y.2d 819 [1957]) and it is made clear that the licensees referred to in subdivision 1(a) are those for whom licenses are mandatory (i.e., participants — owners, drivers, etc.) and not those for whom licenses may be required by the several commissions (i.e., track employees — ushers, mutuel clerks, etc.).